**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MARY C. TERRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| v. | ) |
| | ) |
| CITY OF FORREST PARK, GEORGIA, | ) |
| ANGELYNE BUTLER, ANGELA | ) **JURY TRIAL DEMANDED** |
| REDDING, LATRESA AKINS-WELLS, | ) |
| KIMBERLY JAMES, and | ) |
| DABOUZE ANTOINE, | ) |
| in their individual capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

### PRELIMINARY STATEMENT AND INTRODUCTION

1.     Plaintiff Mary C. Terrell ("Plaintiff" or "Ms. Terrell") faithfully served as an employee of the City of Forrest Park (the "City") for more than twenty-nine years until her unlawful termination on December 18, 2019.

2.     Despite Ms. Terrell's commitment and service to the City, her supervisors, including City Manager Angela Redding ("Redding"), Mayor Angelyne Butler ("Butler"), and City Council Members Latresa Akins-Wells ("Wells"),

Kimberly James ("James"), and Dabouze Antoine ("Antoine"), terminated her employment because of her age, race, and disabilities.

3.      In 2018, the City experienced a significant change in its leadership. During 2017, Butler was elected Mayor, and James was elected to represent Ward 1 on the City Council. Their terms in office began in January 2018. Butler was the City's first African-American Mayor, and upon the beginning of Butler's and James' terms in office, the City Council, which consists of the mayor and five councilmembers, was for the first time majority-African-American.

4.      In 2018, the City began efforts to diversify its workforce, and members of the City Council openly complained that managers of the City's various departments had "been there too long" and stated that they wanted the city management to "look more like them."

5.      The City began terminating older, white employees, like Plaintiff, and hiring younger, African-American employees to replace them.

6.      The City's decision to terminate Ms. Terrell's employment was one of many terminations made in an effort to make the City's management staff look like its new, African-American leaders, and was the last act in a string of unlawful acts of discrimination and retaliation that it has taken against Ms. Terrell because of her

race, age, and disability status and in retaliation for her protected speech complaining that she was a victim of such discrimination.

7.     This is an action for violations under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1866, 42 U.S.C. § 1981, both asserted via 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 12201 *et seq.*, and Americans with Disabilities Act, as amended ("ADA"),  42 U.S.C. §12112.

8.     Ms. Terrell seeks back pay and the lost economic benefits of her employment, front pay in lieu of reinstatement, compensatory, liquidated, and punitive damages, reasonable attorney's fees and costs of litigation, and all other relief this Court may deem just.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Ms. Terrell has satisfied all administrative prerequisites to perfect her claims of discrimination and retaliation under Title VII, the ADEA, and the ADA. Specifically, she has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and has received her Notice of Right to Sue Letter for her claims under Title VII of the Civil Rights Act of 1964, the ADEA, and the ADA.

## JURISDICTION AND VENUE

10.    Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343 (a).

11.    Venue is proper in this Court because: Defendant Redding resides in Hampton, Henry County, Georgia, within this district; Defendants Butler, Wells, James, and Antoine reside in Forest Park, Clayton County, Georgia, within this district; and the events giving rise to this action occurred in Forest Park, Clayton County, Georgia, within this district. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

12.    Plaintiff Terrell is a citizen of the United States and an adult resident of the state of Georgia.  Plaintiff Terrell resides in Henry County and was at all times relevant to this Complaint an employee of the Defendant City of Forest Park.  Ms. Terrell is a 59 year-old Caucasian female.

13.    Defendant City of Forest Park, Georgia is subject to this Court's jurisdiction.  The City may be served by delivering a copy of the Complaint and summons to Mayor Angelyne Butler or City Manager Marc-Antoine Cooper, at Forest Park City Hall, 745 Forest Parkway, Forest Park, Georgia 30297.

14.    The City is a state governmental authority and is subject to suit under 42 U.S.C. § 1983.

15.    Defendant Angela Redding is a resident of the state of Georgia and is subject to this Court's jurisdiction.  She may be served with process via personal service at 1451 Pebble Ridge Lane, Hampton, Georgia 30228 or at the City of Monticello's City Hall, 123 W. Washington Street, Monticello, Georgia 31064.

16.    Defendant Redding is an African-American female and was the City Manager of the City of Forest Park from January, 2018 through January 2020. Defendant Reding is sued in her individual capacity.

17.    Defendant Angelyne Butler is a resident of the state of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at 5074 Old Dixie Highway, Apt. D6, Forest Park, Georgia 30297 or at Forest Park City Hall, 745 Forest Parkway, Forest Park, Georgia 30297.

18.    Defendant Butler is an African-American female and was the Mayor of the City of Forest Park from January 2018 through the present. Defendant Butler is sued in her individual capacity.

19.    Defendant Latresa Akins-Wells is a resident of the state of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at 863 Pineview Drive, Forest Park, Georgia 30297 or at Forest Park City Hall, 745 Forest Parkway, Forest Park, Georgia 30297.

20.     Defendant Wells is an African-American female and was a member of the City Council of the City of Forest Park from January 2012 through the present. Defendant Wells is sued in her individual capacity.

21.     Defendant Kimberly James is a resident of the state of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at 724 Catherine Street, Forest Park, Georgia 30297 or at Forest Park City Hall, 745 Forest Parkway, Forest Park, Georgia 30297.

22.     Defendant James is an African-American female and was a member of the City Council of the City of Forest Park from January 2018 through the present. Defendant James is sued in her individual capacity.

23.     Defendant Dabouze Antoine is a resident of the state of Georgia and is subject to this Court's jurisdiction. He may be served with process via personal service at 4723 Chesler Street, Forest Park, Georgia 30297 or at Forest Park City Hall, 745 Forest Parkway, Forest Park, Georgia 30297.

24.     Defendant Antoine is an African-American male and was a member of the City Council of the City of Forest Park from January 2014 through the present. Defendant Antoine is sued in his individual capacity.

## FACTUAL ALLEGATIONS

25.     Plaintiff served as an employee of the City of Forest Park for more than 29 years. She was hired by the City on August 16, 1990 as a Personnel Clerk and was periodically promoted. In June 1994, Ms. Terrell was promoted to be the City's Personnel Director; she remained in this role until July 2002, when her title was changed to Director of Support Services. Plaintiff remained employed as the City's Director of Support Services until she was unlawfully terminated on December 18, 2019.

26.     As Director of Support Services, Plaintiff was responsible for overseeing the programs, services, staff and resources of the City's Support Services department. The Director of Support Services is responsible for the management and administration of the Support Services department. Plaintiff's duties as Director included: all activities relevant to the personnel function of the City government; ensuring the City's compliance with federal, state, and local employment laws; supervising assigned staff; overseeing all City employee terminations, conducting exit interviews, and determining reasons behind separation; coordinating the Support Services department's activities with other City departments and establishing and maintaining work relationships that are collaborative, responsive, and effective; approving all executive summaries, budget amendments, and other

documents being submitted or presented to the City Council; consulting with and advising the City Manager and City Council concerning department operations and problem resolution; and serving on City and inter-agency boards and committees.

27.     During her nearly three decades of loyal and dedicated service to the City, Plaintiff demonstrated that she was capable of performing these duties.

28.     However, due to racial animus, discriminatory attitudes, and an ageist agenda within the City, Plaintiff was singled out as a target for discrimination and was ultimately terminated in retaliation for her protected speech against the unfair and unlawful treatment.

### The City Terminated Employees Due to Their Age and Race

29.     When Mayor Butler and Councilwoman James took office, on January 1, 2018, the remainder of the City Council consisted of Councilwoman Wells and Counselman Antoine, who were each re-elected in 2017, and Allan Mears and Sandra Bagley. Of these persons, Mears and Bagley were Caucasian; all others were African-American.

30.     Beginning in early 2018 and continuing into 2019, members of the City Council, including Butler, James, Wells and Antoine, discussed making and decided to make changes to the City's leadership team.

31.     In meetings among members of the City Council and others, Butler, James, Wells, and Antoine complained that the leaders of various City departments and other City employees had "been there too long" and stated that the department leaders needed to "look more like" them. In other words, they complained that the leaders of the City's departments were too old and too white.

32.     Butler, James, Wells, and Antoine believed that the then-current City department directors, including Plaintiff, were too old and should be replaced.

33.     Further, Butler, James, Wells, and Antoine believed that white City department directors, including Plaintiff, should be replaced by African-American directors, so that the City's leadership team looked "more like" them.

34.     Beginning in 2018 and continuing through, at least, the termination of Plaintiff's employment, the City, pursuant to the direction of Butler, James, Wells, Antoine, and the City Manager, Defendant Redding, who was supervised by the City Council, began terminating or forcing the resignations of white City employees who were over the age of 40 and replacing them, primarily, with substantially younger, African-Americans.

35.     In January 2018, Dwayne Hobbs was serving the City both as the chief of police and as interim City Manager.

36.     During the City Council's first meeting of 2018, on January 2, 2018, Defendants James, Wells, and Antoine voted to take several steps to strip white employees of their employment or honors that had previously been bestowed upon them by the City.

37.     On January 2, 2018, the City, via the votes of Defendants James, Wells, and Antoine, stripped Hobbs of his duties as interim City Manager and made Defendant Redding, an African-American female, City Manager.

38.     On the same date, the City, via the votes of Defendants James, Wells, and Antoine, terminated former City solicitor, Jerry Patrick, who is white. Patrick was later replaced by Leslie Miller Terry, an African-American female.

39.     Further, on January 2, 2018, the City, at the direction of Defendants James, Wells, and Antoine, removed the names of two white former City employees, Frank Brandon and Elaine Corley, from City-owned buildings. One of those buildings was previously named the Frank Woodward Brandon, III Community Center to honor Mr. Brandon after he served the City for approximately forty years, as an educator and former city manager. The other building was previously named the Elaine Corley Recreation Center to honor Ms. Corley for over fifty years of service to the City. The community center was renamed the Leonard Hartsfield, Sr.

Community Center, to honor the first African-American business owner in Forest Park.

40.     On October 1, 2018, the City terminated the employment of former Forest Park Police Chief Dwayne Hobbs. Hobbs is a white male who, at the time of his termination, was approximately 63 years old and had been employed by the City for more than 45 years.

41.     The City Council members who voted to terminate Hobbs' employment, James, Wells, and Antoine, did so only after declaring that they wanted to install an African-American chief of police and "move in a different direction."

42.     After terminating Mr. Hobbs, the City installed an African-American chief of police who was substantially younger than Mr. Hobbs.

43.     In addition to Plaintiff and Chief Hobbs, since January 2, 2018, the City has terminated or forced the resignation of: Director of Recreation & Leisure Services, Elaine Corley; Administrative Supervisor Susan Ridling; police major Christopher Matson; police detective sergeant Jessica Gassaway; and Director of Public Works, Jeff Eady. Each of these former City employees were white and above the age of 40. They were each replaced by African-American persons who were substantially younger.

44.    Further, since January 1, 2018, the City has terminated or forced the following employees to resign: Finance Director, Mike Blandenburg; City Attorney, Steve Fincher; Assistant Fire Chief, Matt Jackson; Finance Assistant, Regina Ivie; Executive Assistant, Denise Coard; police major, Jamie Reynolds; Director of IT, Darren Duke; police captain, Alex Skwira; police captain, Daniel Podsiadly; and police lieutenant, Tim Pigate. Each of these former City employees was white, and most of them were replaced by African-American employees.

45.    One or more of the above-named former City employees either filed EEOC Charges asserting that the City discriminated against them on the basis of race and/or age or asserted in human resources exit interviews that they were subjected to discrimination and a hostile work environment.

46.    Following the announcement of the resignation of former City fire chief Eddie Buckholts, in March 2020, the City began attempting to recruit a new fire chief. Among the "minimum qualifications" listed for the position on the City's publicly available job posting was a requirement that the candidate have completed the "Carl Holmes Executive Development Institute."

47.    According to its website, the Carl Holmes Executive Development Institute was created "to address the problem of African-Americans in the fire

service being denied the opportunity to receive cutting edge management training." *See* https://edionline.net/about-us/ (last accessed November 4, 2021).

48.     Upon information and belief, the Carl Holmes Executive Development Institute only admits and trains African-American firefighters.

49.     Because it made graduation from the Carl Holmes Executive Development Institute a "minimum qualification" to fill the vacant fire chief job, the City only considered hiring African-American persons to fill this role.

50.     Further, Defendant Wells' publicly-available Facebook posts reveal her focus on hiring persons from racial minorities to replace the City's white personnel.

51.     On September 27, 2018, Wells made a self-congratulatory Facebook post, which included two photographs, depicting an African-American woman and an Asian-American woman, and stated:

> "In other news! Councilwoman Akins-Wells appointed the first Vietnamese ever to serve on any board in Forest Park to serve on our Development Authority board. She was sworn in today. Both of these ladies are in my ward. One is the elections superintendent in which I had a huge hand in making happen, citizen of Ward 4 as well as the Development Authority board member and soon to be Chairman and the other is a resident of Ward 4. I look out for ALL people. It's not limited to blacks. I'm all for diversity and my work speaks for itself. They'll hide the positive stuff like this though. 3 of the 4 are in my ward. I make sure myself and those that want to serve in ward 4 serves. This is OUR COMMUNITY."

52.     After Plaintiff was terminated, Wells made another Facebook post, including pictures of then-current City personnel and elected officials, stating:

> "This is what diversity looks like. When I first became a councilwoman, there weren't any black directors and hadn't been any before 2011. We never had a black male on the council. Our council members and directors now look like what our community looks like. Let's just say it's a new day in Forest Park and we're moving forward!! Just watch how this administration take things to another level."

53.     The City, under the direction and control of Defendants Butler, Wells, James, Antoine, and Redding, in a purported effort to "diversify" its workforce, engaged in a pattern and practice of terminating older, white employees due to their age and race and replacing them with African-American persons who were substantially younger.

54.     By contrast, employees who were younger or African-American were not terminated.

### The City Altered Plaintiff's Working Conditions

55.     Throughout her employment with the City, Ms. Terrell consistently received positive annual reviews, stating that she met or exceeded expectations.

56.     Prior to her termination, Plaintiff had never received any formal discipline from the City.

14

57.    As Director of Support Services, Plaintiff worked with Defendant Redding and the City Attorney to respond to employee concerns, issues, and complaints.

58.    Prior to mid-2019, Ms. Terrell was consistently involved in employment concerns, investigations, and human resources matters concerning all City departments. She also typically provided documentation and information to the City Council any time an employment issue was under review by the Council.

59.    Beginning in late 2018 and continuing through the termination of Plaintiff's employment, Defendant Redding and the City Council, under the control and direction of Defendants Butler, James, Wells, and Antoine, excluded Plaintiff from personnel issues and investigations, and she was not permitted to provide any input or support to the City Council with respect to the personnel actions taken.

60.    Believing that she was being set up for termination, due to her age and race, Ms. Terrell complained to Defendant Redding about the actions being taken. She told Redding that she was not being permitted to perform her job, that she felt she was being discriminated against, and that she felt she was being set up for termination.

61.     Defendant Redding did not take any steps to allow Ms. Terrell to perform her job duties or to otherwise alleviate Ms. Terrell's concerns. Instead, she simply told Ms. Terrell not to worry and that things would settle down eventually.

62.     Ms. Terrell also told the City Personnel Attorney of her concerns that she was being prohibited from performing her job duties, felt that she was being discriminated against, and felt that she was being set up for termination. Further, Ms. Terrell notified the City Personnel Attorney that other employees had been complaining that they believed they were being discriminated against due to their age and race and subjected to a hostile working environment.

63.     In January 2016, Ms. Terrell suffered a fall while on duty as a City employee, which caused her debilitating injuries requiring, among other treatments, a shoulder replacement surgery and multiple hospital stays. Following the shoulder replacement surgery, Ms. Terrell has and continues to suffer from chronic pain and weakness in her right arm, which significantly limit her range of motion and ability to use the arm. In addition, she has been diagnosed with right cervical radiculopathy, from which she has suffered since the time of her injury.

64.     Ms. Terrell's injuries from the fall substantially limit her ability to perform major life activities.

65.    Following her injury and continuing until the City terminated her employment, Ms. Terrell required periodic medical appointments and care for the injuries she suffered in the fall. Ms. Terrell filed a workers compensation claim and received workers compensation benefits, which were still in place for her ongoing care at the time of her termination.

66.    Throughout 2018 and 2019, when Plaintiff informed Defendant Redding that she needed to take leave to go to doctors' appointments, Ms. Redding expressed frustration and questioned the need for Ms. Terrell to go to the doctor.

67.    After Ms. Terrell complained about the discriminatory treatment of herself and others, Defendant Butler requested and obtained a copy of Ms. Terrell's workers compensation file, which contained her confidential medical information. Defendant Butler later shared this file, or information she garnered from the file, with Defendants Redding, Wells, James, and Antoine during the October 2019 meeting in which they decided to terminate Plaintiff's employment.

68.    When she learned that Defendant Butler had requested her workers compensation file, Ms. Terrell complained to Defendant Redding and the City Personnel Attorney that Defendant Butler's actions were an inappropriate invasion of her privacy. The file was provided to Defendant Butler over Ms. Terrell's objections.

69.     In October 2019, Defendants Butler, James, Wells, and Antoine requested and Defendant Redding provided them with a copy of Ms. Terrell's City personnel file.

70.     During a meeting in October 2019 among Defendants Butler, James, Wells, Antoine, Redding, and others, the Defendants decided to terminate Ms. Terrell's employment with the City.

71.     The Defendants decided to terminate Ms. Terrell because she was white, disabled, and, they believed, too old.

72.     Defendants Butler, James, Wells, and Antoine directed Defendant Redding to obtain information to, purportedly, justify terminating Ms. Terrell's employment. Defendant Redding informed them that it would take her approximately three weeks to "get something to terminate" Plaintiff's employment.

## Termination

73.     On November 21, 2019, Defendant Redding informed Plaintiff that she had until 12:15 pm the following day to either resign in lieu of termination or be fired, effective immediately at that time.

74.     During the meeting, Defendant Redding vaguely stated that there were four reasons for the termination threat.

75.     First, Redding stated that Ms. Terrell had provided her with a letter to sign, disciplining a City Fire or EMS employee, which cited the wrong sexual harassment policy.

76.     Second, while acknowledging that she was not sure if it was correct, because she was not the City Manager at the time, Redding stated that it had been brought to her attention that Ms. Terrell previously hired a City employee into a detective position with the police department who allegedly was unqualified for the position.

77.     Third, Redding vaguely stated that several employees had expressed a lack of trust and confidence in coming to HR to discuss issues. When pressed on this, Redding refused to provide Ms. Terrell with any specifics concerning these purported employees, so that Ms. Terrell could effectively respond to the allegation. Instead, Redding claimed that if Ms. Terrell did not resign, details would be included in a termination letter to her the following day.

78.     Fourth, Redding stated that Fire EMS was paying or intended to pay an employee 24 hours-worth of personal leave and that she had not seen justification for this in the personnel rules and regulations.

79.   Ms. Terrell did not resign, and on the following day, November 22, 2019, Defendant Redding provided Ms. Terrell with a letter, titled "Notice of Termination of Employment."

80.   In the Notice of Termination of Employment, the City claimed that it terminated Plaintiff because: (1) she had "demonstrated a lack of understanding of the City's Personnel rules and Regulations with respect to adverse personnel actions" by allegedly preparing a letter of termination for Redding to sign, even though it was allegedly not proper for Redding to sign it,  which also "failed to cite the City's current sexual harassment policy for which that individual was being terminated;" (2) she had "demonstrated a lack of understanding of the City's leave policies, resulting in the overpayment of pay and benefits to City employees;" (3) "several employees" had "expressed to [Redding] a lack of trust in bringing personnel matters to [Ms. Terrell's] attention for fear of retaliation from their supervisors," again without providing any specific information about the personnel or department involved; and (4) she "previously allowed the Police Department to hire a civilian and place her in a Detective position although no such position existed for a civilian" the position was not appropriately advertised, and the position "was funded with the salary dedicated for a sworn Detective."

81.    The Notice of Termination further stated that, effective immediately, Ms. Terrell was suspended with pay.

82.    The reasons stated for the termination, both in the Notice of Termination and in the meeting with Defendant Redding were nothing more than pretexts for discrimination.

83.    Ms. Terrell did not prepare the allegedly improper letter terminating the Fire Department employee. Rather, the letter was prepared by the City's employment attorney, who merely asked Ms. Terrell to provide the letter to Defendant Redding, which she did.

84.    Ms. Terrell was not involved in the drafting of that termination letter, did not select who would sign the letter, and did not decide which sexual harassment policy would be cited in the letter. She merely forwarded the letter to Defendant Redding at the request of the City's own attorney.

85.    Ms. Terrell did not misunderstand or misapply the City's leave policies or cause an overpayment of either pay or benefits to City personnel.

86.    Rather, she complied with the City's longstanding leave policies, dating back to at least the early 1990s, which provided all employees with one day of personal leave each year, which could be taken with prior approval by the employee's supervisor. The number of hours credited to an employee for personal

leave varied, depending upon the number of hours typically worked by an employee based on job classification. Most of the City's employees, who generally worked an eight-hour workday, received eight hours of personal leave each year. Police officers, who typically worked twelve-hour shifts, received twelve hours of personal leave each year. Firefighters, who generally worked a twenty-four-hour shift, received twenty-four hours of personal leave each year. The leave could only be used on one day and was designed such that an employee would receive the compensation he or she otherwise would have received if working a full shift on the date the leave was taken.

87.    Ms. Terrell did nothing that would cause reasonable City employees to fear that they would be retaliated against if they contacted her to bring a personnel matter or human resources issue to her attention.

88.    In fact, she implemented policies that were designed to facilitate noncontroversial resolutions to workplace issues when they arose and to encourage employees to address such issues in a prompt and appropriate manner, either within their particular department or, if that was not feasible, directly through Plaintiff.

89.    Of course, resolution of workplace disagreements would sometimes, of necessity, involve discussing the issue an employee raised with management of the affected City department.

90.     While Ms. Terrell did maintain healthy and appropriate working relationships with the directors of other City departments, as required by her job description, she did not maintain a "close personal friendship" with any department directors.

91.     Prior to her termination, City employees frequently discussed human resources issues with Ms. Terrell, and she is unaware of any employee not feeling comfortable bringing workplace issues to her attention.

92.     Finally, with respect to the civilian hired to work in the police department, Ms. Terrell did nothing wrong, and the hiring decision was made more than four years before she was terminated, with the express permission of then-City Manager, Frank Brandon.

93.     In 2015, the City's police department had a job opening which was posted as an opening for a detective. However, in reality, the open position was for an investigator, did not involve detective work, and did not require the employee to possess P.O.S.T. certification.

94.     At the time, Ms. Terrell discussed the issue of the job title and actual job duties for the opening with Mr. Brandon, and he approved hiring Francie Turner, who he knew was not P.O.S.T. certified, to fill the position. Ms. Turner was hired in September 2015.

95.    The City utilized a progressive discipline policy with respect to its employees, which provided for verbal counseling, written counseling, suspension, and termination of employees. While the progressive discipline policy stated that director-level employees, like Plaintiff, were not subject to the policy, it was the city's practice, from at least the mid-1990s until the time of Plaintiff's employment, to treat director-level employees as though they were subject to the progressive discipline policy. On multiple occasions prior to Plaintiff's termination, City directors who violated City policies or procedures, were poor performers, or made poor ethical choices were not terminated from their employment before they had received verbal counselling, written counselling, or suspension.

96.    Prior to being notified that she would be terminated, Ms. Terrell was not counselled for any alleged deficiency in her work, and she never received any documentation for any alleged infractions or performance issues.

97.    Ms. Terrell's termination became effective on December 18, 2019.

98.    Following her termination, after a brief interim period, the City hired an African-American, Shalonda Brown as the new Director of Support Services. Ms. Brown is substantially younger than Ms. Terrell.

99.    On or about February 4, 2020, Ms. Terrell filed a Charge of Discrimination with the EEOC, asserting that her termination was a result of race, age, and disability discrimination.

100.    On August 9, 2021, the EEOC terminated its processing of Ms. Terrell's Charge of Discrimination and provided Ms. Terrell with a Notice of Right to Sue.

101.    As a result of her termination, Ms. Terrell was not paid out her accrued sick leave, for which she would have been entitled to receive payment if she had voluntarily resigned or retired. In addition, as a result of her termination, Ms. Terrell is no longer eligible to continue her medical benefits through the City, which she would have been entitled to continue if she had voluntarily retired.

## CAUSES OF ACTION

### COUNT ONE
### 42 U.S.C. § 1983 – Denial of Equal Protection of the Laws on the Basis of Race in Violation of the Fourteenth Amendment to the United States Constitution
### *Against Defendants Butler, Redding, Wells, James, and Antoine in their Individual Capacities*

102.    All preceding paragraphs are hereby incorporated herein by reference, as though each of the factual allegations was restated.

103.    As a Caucasian, United States citizen, Plaintiff is a member of a class of persons entitled under the Fourteenth Amendment to the U.S. Constitution to

equal protection of the laws, including those laws that prohibit discrimination because of race.

104.   The Defendants treated Plaintiff more harshly than African-Americans based upon race.

105.   By virtue of their actions, Defendants deprived Plaintiff of her right to equal protection of the laws as secured by the Fourteenth Amendment to the U.S. Constitution and protected by 42 U.S.C. § 1983.

106.   At all times relevant to this Complaint, Plaintiff was an employee of a public institution.

107.   Defendant Butler, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

108.   Defendant Butler, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as the Mayor, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing

in the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Butler's failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

109.   Defendant Butler, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

110.   Defendant Butler, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

111.   As a direct result of the actions, statements and/or policies of Defendant Butler, Ms. Terrell has suffered an unconstitutional deprivation of her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

112.   Defendant Butler acted intentionally and with callous disregard for Ms. Terrell's known statutory and constitutional rights.

113.   Defendant Butler's conduct described above has directly and proximately caused, and continues to cause, Ms. Terrell to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

114.   Defendant Wells, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

115.   Defendant Wells, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as a member of the City Council, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Wells' failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

116.   Defendant Wells, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

117.   Defendant Wells, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

118.   As a direct result of the actions, statements and/or policies of Defendant Wells, Ms. Terrell has suffered an unconstitutional deprivation of her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

119.   Defendant Wells acted intentionally and with callous disregard for Ms. Terrell's known statutory and constitutional rights.

120.   Defendant Wells' conduct described above has directly and proximately caused, and continues to cause, Ms. Terrell to suffer loss of income and other financial benefits, a loss of future professional opportunities and future

income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

121.   Defendant James, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

122.   Defendant James, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as a member of the City Council, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant James' failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

123.   Defendant James, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a

hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

124.   Defendant James, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

125.   As a direct result of the actions, statements and/or policies of Defendant James, Ms. Terrell has suffered an unconstitutional deprivation of her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

126.   Defendant James acted intentionally and with callous disregard for Ms. Terrell's known statutory and constitutional rights.

127.   Defendant James's conduct described above has directly and proximately caused, and continues to cause, Ms. Terrell to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

128.   Defendant Antoine, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by

directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

129. Defendant Antoine, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because he, as a member of the City Council, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and he knew about the violations of Ms. Terrell's rights, yet he failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Antoine's failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

130. Defendant Antoine, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

131.   Defendant Antoine, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

132.   As a direct result of the actions, statements and/or policies of Defendant Antoine, Ms. Terrell has suffered an unconstitutional deprivation of her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

133.   Defendant Antoine acted intentionally and with callous disregard for Ms. Terrell's known statutory and constitutional rights.

134.   Defendant Antoine's conduct described above has directly and proximately caused, and continues to cause, Ms. Terrell to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

135.   Defendant Redding, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

136.   Defendant Redding, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as the City Manager, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Redding's failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

137.   Defendant Redding, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

138.   Defendant Redding, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

139.   As a direct result of the actions, statements and/or policies of Defendant Redding, Ms. Terrell has suffered an unconstitutional deprivation of her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

140.   Defendant Redding acted intentionally and with callous disregard for Ms. Terrell's known statutory and constitutional rights.

141.   Defendant Redding's conduct described above has directly and proximately caused, and continues to cause, Ms. Terrell to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

142.   Plaintiff's race was a "motivating factor" in Defendants' decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

143.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the below prayer for relief against Defendants Butler, Redding, Wells, James, and Antoine in their Individual Capacities for Defendants' violation of her rights under the Fourteenth Amendment to the U.S. Constitution, which rights are protected from infringement by state actors through the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**COUNT TWO**
**42 U.S.C. § 1983 *Monell* Claim – Denial of Equal Protection of the Laws on the Basis of Race in Violation of the Fourteenth Amendment to the United States Constitution**
***Against Defendant City of Forest Park***

144.    All preceding paragraphs are hereby incorporated as though each of the factual allegations was restated herein.

145.    At all times relevant and material to this Complaint, Defendants Butler, Wells, James, and Antoine were, collectively, the highest-ranking City officials with final policymaking authority to promote, appoint, discipline, and take other personnel actions affecting director-level City employees, including Ms. Terrell.

146.    On behalf of the City, Defendants Butler, Wells, James, and Antoine adopted or ratified a policy, practice, custom, or procedure of terminating the employment of Caucasian employees on the basis of race and hiring African-American employees in their place.

147.    Defendants Butler, Wells, James, and Antoine, on behalf of the City, decided and required that Plaintiff's employment be terminated.

148.    Plaintiff's employment would not have been terminated "but for" Defendants Butler's, Wells', James', and Antoine's decision to do so, and these Defendants' decision was the "but for cause of, and determinative influence on" Plaintiff's termination.

149.   Defendants Butler, Wells, James, and Antoine were, collectively, the final decisionmakers and individuals with policymaking authority for the City with respect to the unlawful employment actions giving rise to and complained of in this Complaint, which were carried out by the City Manager, Defendant Redding.

150.   As a Caucasian, United States citizen, Plaintiff is a member of a class of persons entitled under the Fourteenth Amendment to the U.S. Constitution to equal protection of the laws, including those laws that prohibit discrimination because of race.

151.   Defendant City of Forest Park treated Plaintiff more harshly than African-Americans based upon race.

152.   By virtue of the actions of Defendants Butler, Wells, James, and Antoine, in their official capacities, Defendant City of Forest Park deprived Plaintiff of her right to equal protection of the laws as secured by the Fourteenth Amendment to the U.S. Constitution and protected by 42 U.S.C. § 1983.

153.   At all times relevant to this Complaint, Plaintiff was an employee of a public institution, the City.

154.   Defendants Butler, Wells, James, and Antoine, acting in their official capacities and under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the

City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

155.   Defendants Butler, Wells, James, and Antoine, acting in their official capacities under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because they were in positions of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and knew about the violations of Ms. Terrell's rights, yet they failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendants' failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

156.   Defendants Butler, Wells, James, and Antoine, acting in their official capacities under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

157.   Defendants Butler, Wells, James, and Antoine, acting in their official capacities under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

158.   As a direct result of the actions, statements and/or policies of Defendants Butler, Wells, James, and Antoine, acting in their official capacities on behalf of the City, Ms. Terrell has suffered an unconstitutional deprivation of her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

159.   Defendants Butler, Wells, James, and Antoine, in their official capacities, acted intentionally and with callous disregard for Ms. Terrell's known statutory and constitutional rights.

160.   The conduct of Defendants Butler, Wells, James, and Antoine, in their official capacities, described above has directly and proximately caused, and continues to cause, Ms. Terrell to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

161.   Plaintiff's race was a "motivating factor" in Defendants' decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

162.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the below prayer for relief against Defendant City of Forest Park for Defendants' violation of her rights under the Fourteenth Amendment to the U.S. Constitution, which rights are protected from infringement by state actors through the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## COUNT THREE
### 42 U.S.C. § 1981 – Race Discrimination
### (Asserted via 42 U.S.C. § 1983)
### *Against the City of Forest Park and Defendants Butler, Redding, Wells, James, and Antoine in their Individual Capacities*

163.   All preceding paragraphs are hereby incorporated as though each of the factual allegations was restated.

164.   At all times material to this Complaint, Plaintiff and Defendants were parties to an employment agreement under which Plaintiff worked for Defendants and Defendants compensated Plaintiff for her work.

165.   Plaintiff performed her obligations under her employment agreement.

166.   42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of their

employment agreements with Defendants and from which Plaintiff is protected by 42 U.S.C. § 1983.

167.   The above-pled discriminatory conduct toward Plaintiff, including, but not limited to, Defendants' discriminatory discharge based on race constitute unlawful race discrimination against Plaintiff in the terms and conditions of her employment in violation of 42 U.S.C. § 1981.

168.   Defendants violated Plaintiff's rights under 42 U.S.C. § 1981 by terminating her employment because of her race.

169.   Defendant Butler, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

170.   Defendant Butler, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as Mayor, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing to the discriminatory conduct and causing the

discrimination against Ms. Terrell to persist and worsen. Defendant Butler's failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

171.   Defendant Butler, individually and in her official capacity, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

172.   Defendant Butler, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

173.   Defendant Butler, individually and in her official capacity, undertook her conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook her conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Butler.

174.    Defendant Butler's conduct described above has directly and proximately caused, and continues to cause, Plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

175.    Defendant Redding, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

176.    Defendant Redding, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as City Manager, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing to the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Redding's failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

177.  Defendant Redding, individually and in her official capacity, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

178.  Defendant Redding, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

179.  Defendant Redding, individually and in her official capacity, undertook her conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook her conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Redding.

180.  Defendant Redding's conduct described above has directly and proximately caused, and continues to cause, Plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future

income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

181.   Defendant Wells, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

182.   Defendant Wells, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as a member of the City Council, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing to the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Wells' failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

183.   Defendant Wells, individually and in her official capacity, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment

based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

184.   Defendant Wells, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

185.   Defendant Wells, individually and in her official capacity, undertook her conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook her conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Wells.

186.   Defendant Wells' conduct described above has directly and proximately caused, and continues to cause, Plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

187.   Defendant James, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

188.   Defendant James, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because she, as a member of City Council, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and she knew about the violations of Ms. Terrell's rights, yet she failed to act, thereby acquiescing to the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant James' failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

189.   Defendant James, individually and in her official capacity, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly

involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

190.   Defendant James, individually and in her official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

191.   Defendant James, individually and in her official capacity, undertook her conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook her conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant James.

192.   Defendant James' conduct described above has directly and proximately caused, and continues to cause, Plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

193.   Defendant Antoine, individually and in his official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by directly participating in the City's

discriminatory actions to subject Ms. Terrell to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

194.   Defendant Antoine, individually and in his official capacity, acting under  color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment, because he, as a member of City Council, was in a position of authority to take responsive action to stop the violations of Ms. Terrell's constitutional rights as described herein, and he knew about the violations of Ms. Terrell's rights, yet he failed to act, thereby acquiescing to the discriminatory conduct and causing the discrimination against Ms. Terrell to persist and worsen. Defendant Antoine's failure to act in the face of known violations of Ms. Terrell's constitutional rights amounted to deliberate indifference.

195.   Defendant Antoine, individually and in his official capacity, acting under the color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included excluding Ms. Terrell from meetings in which she was previously regularly involved; preventing Ms. Terrell from performing key aspects of her job; accessing Ms. Terrell's protected medical information; and failing to adhere to the City's progressive discipline policy.

196.   Defendant Antoine, individually and in his official capacity, acting under color of state law, violated Ms. Terrell's constitutional right to be free from race discrimination in employment by terminating her employment because of race.

197.   Defendant Antoine, individually and in his official capacity, undertook his conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook his conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Antoine.

198.   Defendant Antoine's conduct described above has directly and proximately caused, and continues to cause, Plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

199.   Defendants' interference with Plaintiff's ability to execute her job duties violated Plaintiff's rights under § 1981 because of her statutory right to equal benefits of laws and proceedings as well as her contract-based employment right to be free from race discrimination. Defendants' final decision-making role in Plaintiff's retaliatory termination gives rise to Defendants' liability under § 1981.

200.   Plaintiff's race was a "motivating factor" in Defendants' decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

201.   As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

202.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the below prayer for relief against Defendant City of Forest Park and against Defendants Butler, Redding, Wells, James, and Antoine in their Individual Capacities for their violations of her rights under 42 U.S.C. § 1981, which rights are protected from infringement by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## COUNT FOUR
**Retaliation – Retaliatory Discipline, Retaliation in the Terms and Conditions of Employment, and Retaliatory Termination in Violation of 42 U.S.C. § 1981**
***Against the City of Forest Park and against Defendants Butler, Redding, Wells, James, and Antoine in their Individual Capacities***

203.   Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

204.   Plaintiff and Defendant City of Forest Park were parties to an employment agreement under which, inter alia, Plaintiff worked for Defendant and Plaintiff was compensated for her work.

205.   Plaintiff performed her contractual obligations.

206.   Plaintiff is a Caucasian citizen who engaged in statutorily protected activity by objecting to and complaining against race discrimination prohibited by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

207.   42 U.S.C. § 1981 prohibits the Defendants from retaliating against Plaintiff because she opposed, objected to, and complained against race discrimination prohibited by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

208.   During Plaintiff's employment with the City, Defendants subjected her to retaliation because she opposed, objected to, and complained against illegal race discrimination. Defendants retaliated against Plaintiff by taking various retaliatory actions against her including, but not limited to: (a) obtaining, reviewing, and discussing the contents of Plaintiff's workers compensation file, which contained her protected health information; (b) continuing to exclude Plaintiff from meetings and interfere with Plaintiff's ability to perform her job; and (c) subjecting Plaintiff

to termination on the basis of her exercise of federally protected rights as compared with employees who did not engage in similar statutorily protected activity.

209. The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

210. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

211. Defendants undertook their conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook their conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against them.

212. Defendants took their actions against Plaintiff under color of State and local law, ordinances, customs or usages.

213. Defendant Redding possessed final policymaking authority with respect to the wrongful actions she undertook against Plaintiff which are complained of herein.

214. Defendant Redding, individually and in her official capacity, violated clearly established law.

215.   Additionally, Defendant Redding, individually and in her official capacity, undertook her unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against her.

216.   Defendant Butler possessed final policymaking authority with respect to the wrongful actions she undertook against Plaintiff which are complained of herein.

217.   Defendant Butler, individually and in her official capacity, violated clearly established law.

218.   Additionally, Defendant Butler, individually and in her official capacity, undertook her unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against her.

219.   Defendants Wells, James, and Antoine collectively possessed final policymaking authority with respect to the wrongful actions they undertook against Plaintiff which are complained of herein.

220.   Defendants Wells, James, and Antoine, individually and in their official capacities, violated clearly established law.

221.   Additionally, Defendants Wells, James, and Antoine, individually and in their official capacities, undertook their unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against them.

222.   Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

223.   Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

224.   Pursuant to 42 U.S.C. § 1981, Plaintiff is entitled to damages against Defendants, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

## COUNT FIVE
### Race Discrimination - Title VII of the Civil Rights Act of 1964
### *Against Defendant City of Forest Park*

225.   Plaintiff incorporates each of the above factual allegations as if fully restated herein.

226.   At all times material to this Complaint, Defendant City of Forest Park was an "employer," and Plaintiff was this Defendant's "employee," as those terms are used under Title VII.

227.   Defendant City of Forest Park violated the Plaintiff's rights under Title VII by subjecting Plaintiff to disparate discipline because of her race.

228.   Defendant City of Forest Park violated the Plaintiff's rights under Title VII by terminating her employment because of her race.

229.   Plaintiff's race was a "motivating factor" in Defendant City of Forest Park's decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

230.   Defendant City of Forest Park's above-pled discriminatory conduct toward Plaintiff constitutes race discrimination in violation of Title VII.

231.   Defendant City of Forest Park acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

232.   As a result of Defendant City of Forest Park's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

233.   Plaintiff is entitled to an award of back pay and benefits, compensatory damages, attorneys' fees, and all other appropriate damages, remedies, and other relief under Title VII and all federal statutes providing remedies for violations of Title VII.

**COUNT SIX**
**Title VII Retaliation – Retaliatory Discipline, Retaliation in the Terms and Conditions of Employment, and Retaliatory Termination**
***Against Defendant City of Forest Park***

234.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

235.   At all relevant times, Plaintiff was an "employee" of the City of Forest Park as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

236.   At all relevant times, Defendant City of Forest Park was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

237.   During her employment with Defendant City of Forest Park, Plaintiff engaged in statutorily protected activity by, among other things, complaining of race discrimination in violation of Title VII, including but not limited to, in her complaints of discrimination to Defendant Redding and to the City's employment attorney.

238.   Defendant City of Forest Park and its agents, Defendants Redding, Butler, Wells, James, and Antoine subjected Ms. Terrell to retaliation because she opposed, objected to, and complained against illegal race discrimination. Defendants retaliated against Plaintiff by taking various retaliatory actions against her including, but not limited to: (a) obtaining, reviewing, and discussing the contents of Plaintiff's workers compensation file, which contained her protected health information; (b)

continuing to exclude Plaintiff from meetings and interfere with Plaintiff's ability to perform her job; and (c) subjecting Plaintiff to termination on the basis of her exercise of federally protected rights as compared with employees who did not engage in similar statutorily protected activity.

239.   Defendant City of Forest Park lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such purported legitimate justifications are mere pretext for retaliation.

240.   The above-pled actions of Defendant City of Forest Park constitute retaliation in violation of Title VII of the Civil Rights Act of 1964.

241.   The actions of Defendant City of Forest Park in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

242.   As a direct and proximate result of Defendant City of Forest Park's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

243.   As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other

equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT SEVEN
**Discriminatory Termination Based on Age in Violation of the Age Discrimination in Employment Act 29 U.S.C. §§ 12201 et seq.**
***Against Defendant City of Forest Park***

244.   All preceding paragraphs are hereby incorporated as though each of the factual allegations was restated.

245.   Plaintiff was fifty-eight years old and qualified for her position when Defendants fired her.

246.   The City regularly made discriminatory comments regarding older employees. For example, in meetings that occurred during 2018 and 2019, Defendants Butler, Wells, James, and Antoine each complained about senior managers in the City who had "been there too long," implying that they viewed these persons, including Plaintiff, as too old.

247.   In addition, beginning in 2018 and continuing at least until the termination of Plaintiff's employment, the City either terminated or forced the resignations of at least 6 supervisors who were over the age of forty.

248.   In addition, the City marginalized Plaintiff while treating younger similarly-situated employees more favorably.

249.   Defendant City of Forest Park terminated Plaintiff's employment because of her age.

250.   Plaintiff's age was a "motivating factor" in Defendant City of Forest Park's decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

251.   Plaintiff suffered damages as a result of the City's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

252.   Defendants willfully violated Plaintiff's rights under the ADEA and, as a result, are liable for liquidated damages.

253.   Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT EIGHT
### Discrimination in Violation of the Americans with Disabilities Act, as Amended
### 42 U.S.C. §12112
### *Against Defendant City of Forest Park*

254.   All preceding paragraphs are hereby incorporated as though each of the factual allegations was restated.

255.   Following her fall in 2016 and continuing through the date of her termination, Plaintiff was at all times a "qualified person with a disability," within the meaning of the ADA, as amended.

256.   The injuries Plaintiff suffered as a result of her fall substantially limited one or more of her major life activities, including, without limitation, performing manual tasks, sleeping, and lifting.

257.   As a result of and following her fall, in 2016, Plaintiff required ongoing, periodic medical care and appointments through the remainder of her employment with the City. Ms. Terrell sometimes had to take medical leave in order to attend such medical appointments.

258.   From January 2, 2018 through its termination of Plaintiff's employment, the City regularly made discriminatory comments regarding Plaintiff's need for medical care concerning her disabilities. For example, when Plaintiff needed to attend doctors' appointments related to her disabilities, Defendant Redding would frequently question whether Plaintiff, in fact, needed to go to the doctor and chided her about using leave time and being away from work.

259.   Further, soon after Plaintiff complained to Defendant Redding and the city attorney that she was being discriminated against, Defendant Butler obtained a copy of Plaintiff's workers' compensation file, which contained information

concerning Plaintiff's disabilities and medical treatment. Defendant Butler then shared information garnered from this file with Defendants Redding, Wells, James, and Antoine.

260.   In addition, the City marginalized Plaintiff while treating non-disabled, similarly-situated employees more favorably.

261.   Defendant City of Forest Park terminated Plaintiff's employment because of her disabilities, in violation of the Americans with Disabilities Act, as amended.

262.   Plaintiff's disabilities were a "motivating factor" in Defendant City of Forest Park's decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

263.   The actions of Defendant City of Forest Park in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

264.   As a direct and proximate result of Defendant City of Forest Park's violations of the ADA, as amended, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

265.   As a result of the above-pled violations of the ADA, as amended, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by the ADA, as amended, and all statutes providing for relief for violations of the ADA.

### COUNT NINE
### Punitive Damages Under 42 U.S.C. §1983
### *Against Defendants Redding, Butler, Wells, James, and Antoine in their Individual Capacities*

266.   All preceding paragraphs are hereby incorporated as though each of the factual allegations was restated.

267.   The aforementioned actions of Defendants Redding, Butler, Wells, James, and Antoine were taken in their individual capacities under color of state or local law.

268.   In taking these actions, Defendants Redding, Butler, Wells, James, and Antoine did so in clear violation of statutory and Constitutional law.

269.   Defendants Redding, Butler, Wells, James, and Antoine acted in reckless disregard for Plaintiff's Constitutional rights.

270.   Defendants Redding, Butler, Wells, James, and Antoine acted in reckless disregard for Plaintiff's rights under 42 U.S.C. §1981.

271. Because of Defendants Redding's, Butler's, Wells', James', and Antoine's conduct, Plaintiff is entitled to punitive damages against them in their individual capacities.

272. Defendants Redding's, Butler's, Wells', James', and Antoine's discriminatory actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences. Accordingly, Plaintiff is entitled to punitive damages against them in their individual capacities.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Terrell demands a TRIAL BY JURY and the following relief:

(a)  declare that Defendants have violated Plaintiff's rights under the Constitution and federal statutes listed above;

(b)  permanently enjoin Defendants from violating, in the future, Plaintiff's rights under any of the federal statutes listed above;

(c)  award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d)  award Plaintiff liquidated damages;

(e)     award Plaintiff prejudgment interest as required by law;

(f)     award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(g)     award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(h)     award Plaintiff punitive damages, against Defendants Redding, Butler, Wells, James, and Antoine individually sufficient to punish them for their unlawful conduct and deter them from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(i)     award Plaintiff reasonable attorneys' fees and expenses pursuant to Title VII, the ADEA, and 42 U.S.C. § 1988; and

(j)     grant such additional relief as may be just.

Respectfully submitted this 5th day of November, 2021.

**BUCKLEY BEAL, LLP**

*/s/ Edward D. Buckley*
Edward D. Buckley
GA Bar No. 092750
edbuckley@buckleybeal.com
J. Kyle Brooks
GA Bar No. 773561
kbrooks@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101