**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **MARY C. TERRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | **1:21-CV-04613-MHC-CMS** |
| **CITY OF FORREST PARK, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**</u>

In accordance with Local Rule 16.2, the Plaintiff and Defendants the City of Forest Park, Georgia (the "City"), Angelyne Butler, Angela Redding, Latresa Akins-Wells, Kimberly James, and Dabouze Antoine ("individual Defendants"), (hereinafter collectively "Defendants"), respectfully file this Joint Preliminary Report and Discovery Plan, following the parties' conference held in accordance with Federal Rule of Civil Procedure 26(f).

1.   <u>**Description of Case:**</u>

     (a)   **Describe briefly the nature of this action.**

This is an employment discrimination action in which the Plaintiff asserts claims against Defendants for: (1) race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) race discrimination and

retaliation under 42 U.S.C. § 1981; (3) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution on the basis of race, pursuant to 42 U.S.C. § 1983; (4) disability discrimination under the Americans with Disabilities Act ("ADA"), as amended; (5) age discrimination under the Age Discrimination in Employment Act ("ADEA"); and (6) punitive damages, pursuant to 42 U.S.C. §1983. The Defendants deny each of Plaintiff's claims.

**(b)    Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**By Plaintiff:**

Plaintiff Mary C. Terrell, who is white, was employed by the City of Forest Park from August 1990 until her employment was terminated, on December 18, 2019. In 1994, she was promoted to be the City's Personnel Director; she remained in this role until July 2002, when her title was changed to Director of Support Services. She remained so employed until her termination.

In 2018, the City experienced a significant change in its leadership. During 2017, Defendant Butler was elected Mayor, and Defendant James was elected to the City Council. Their terms in office began in January 2018. Butler was the City's first African-American Mayor, and upon the beginning of Butler's and James' terms in office, the City Council, which consists of the mayor and five councilmembers, was for the first time majority African-American. When Mayor Butler and Councilwoman

- 2 -

James took office, the remainder of the City Council consisted of Defendant Wells and Defendant Antoine, who were each re-elected in 2017, and Allan Mears and Sandra Bagley, who are not parties to this case. Of these persons, Mears and Bagley were Caucasian; all others were African-American. Also in 2018, Defendant Redding was made the City Manager for the City of Forest Park; she is also African-American.

Beginning in early 2018 and continuing into 2019, members of the City Council, including Defendants Butler, James, Wells, and Antoine, discussed making and decided to make changes to the City's leadership team. In meetings among members of the City Council and others, Butler, James, Wells, and Antoine complained that the leaders of various City departments and other City employees had "been there too long" and stated that the department leaders needed to "look more like" them. In other words, they complained that the leaders of the City's departments were too old and too white. Butler, James, Wells, and Antoine believed that the City's department directors, including Plaintiff, were too old and should be replaced by African-American directors, so that the City's departmental leadership looked "more like" them.

Beginning in 2018 and continuing through, at least, the termination of Plaintiff's employment, the City, pursuant to the direction of Butler, James, Wells, Antoine, and Redding, who was supervised by the City Council, terminated or forced the resignations of white City employee, a number of whom were over the age of 40, and

replaced them, primarily, with African-Americans who were also substantially younger than the persons who were over 40. In addition, during the City Council's first meeting of 2018, Defendants James, Wells, and Antoine voted to take several steps to strip white employees and former-employees of their employment duties or honors previously bestowed by the City, including:

- stripping Dwayne Hobbs, who is white, of his duties as interim City Manager and making Defendant Redding City Manager;

- terminating the City Solicitor, Jerry Patrick, who is white (he was later replaced by Leslie Terry, an African-American female); and

- removing the names of two white former City employees from City-owned buildings that were previously named in their honor.

On October 1, 2018, the City, at the individual Defendants' direction, terminated the employment of former Chief of Police Dwayne Hobbs, who was white and was approximately 63 years old; he was replaced by an African-American chief of police who was substantially younger.

In addition to Chief Hobbs, since January 2, 2018, the City terminated or forced the resignations of approximately fifteen white City employees, the vast majority of whom were City management personnel, and replaced them, primarily, with African-Americans. Of those persons who were terminated or forced to resign, nearly half were over the age of 40 and were also replaced by persons who were substantially younger.

Additionally, following the announcement of the resignation of now-former City fire chief, Eddie Buckholts, who is white, the City began attempting to recruit a new fire chief. The City made completion of the "Carl Holmes Executive Development Institute" one of the necessary "minimum qualifications" for the job opening. According to its website, this institute was created "to address the problem of African-Americans in the fire service being denied the opportunity to receive cutting edge management training." Plaintiff contends that the institute only admitted and trained African-American firefighters and that by making graduation from the institute a "minimum qualification" for the vacancy, the City only considered hiring African-Americans to fill that role.

In short, at the direction and control of the individual Defendants and in a purported effort to "diversify" its workforce, the City engaged in a pattern and practice of terminating older, white employees due to their age and race and replacing them with African-American persons who were substantially younger.

In 2016, Plaintiff suffered an on-the-job fall, which left her with injuries that thereafter substantially limited her ability to perform major life activities. Following her injury and continuing until her termination, Plaintiff required periodic medical appointments for care of the injuries she suffered; Plaintiff filed a workers compensation claim and received workers compensation benefits, which were still in

place for her ongoing care at the time of her termination. Throughout 2018 and 2019, when Plaintiff informed Defendant Redding that she needed to take leave to go to doctors' appointments, Redding expressed frustration and questioned the need for Plaintiff to go to the doctor.

As Director of Support Services, Plaintiff's job duties included, among other things: all activities relevant to the personnel function of the City government (*e.g.*, participating in investigations of employees and in employee discipline decisions); ensuring the City's compliance with federal, state, and local employment laws; overseeing all City employee terminations, conducting exit interviews, and determining reasons behind separation; approving all executive summaries, budget amendments, and other documents being submitted or presented to the City Council; and consulting with and advising the City Manager and City Council concerning department operations and problem resolution. However, beginning in late 2018, Defendants began excluding Plaintiff from personnel issues and investigations and disallowing her to provide input or support to the City Council with respect to the personnel actions taken. Previously, she was consistently involved in such employment concerns, as they fell squarely within her job duties. Believing that she was being set up for termination, due to her age and race, Plaintiff complained to Defendant Redding about the actions being taken. She told Redding that she was not

being permitted to perform her job, that she felt she was being discriminated against, and that she felt she was being set up for termination. Redding took no action to allow Plaintiff to resume performing her job duties or to otherwise alleviate Plaintiff's concerns.

After Plaintiff complained about discrimination, Defendants continued to exclude Plaintiff from personnel issues and investigations and disallow her input to the City Council regarding personnel actions. In addition, Defendant Butler requested and obtained a copy of Plaintiff's workers compensation file, which contained her confidential medical information. When Plaintiff learned of this request, she objected to both Defendant Redding and the City's personnel attorney. Butler later shared the worker's compensation file, or information she garnered from it, with the other Defendants during the meeting in which they decided to terminate Plaintiff's employment. In October 2019, Defendant Redding provided a copy of Plaintiff's personnel file to the remaining individual Defendants, and the Defendants decided to terminate Plaintiff's employment with the City. Plaintiff contends that Defendants terminated her employment because she was white, disabled, and, they believed, too old and in retaliation for her complaints about discrimination.

During the meeting in which Defendants decided to terminate Plaintiff's employment, Defendants Butler, James, Wells, and Antoine directed Defendant

Redding to obtain information that would, purportedly, justify terminating Plaintiff's employment. On November 21, 2019, Defendant Redding informed Plaintiff that she had until 12:15pm the following day to either resign in lieu of termination or be fired, effective immediately at that time. During the termination meeting, Defendant Redding vaguely stated four reasons for the termination, which Plaintiff contends were simply pretext for discrimination. Plaintiff did not resign, and on November 22, 2019, Defendant Redding provided her with a letter titled "Notice of Termination of Employment," which re-stated the same four purported reasons for the termination. Plaintiff's termination became effective on December 18, 2019. Following her termination, after a brief interim period, the City filed her position by hiring an African-American woman who was substantially younger than Plaintiff.

   **By Defendants:**

   Plaintiff Mary C. Terrell is a former employee of the City.  Plaintiff alleges that during her employment she was subject to unlawful discrimination and retaliation by Defendants. The Complaint contains nine (9) counts.  Counts One and Two are brought against Defendants pursuant to 42 U.S.C. § 1983 based on an alleged denial of Equal Protection of the Laws and allege that Plaintiff was subjected to discrimination based on her race and was subject to retaliation for engaging in protected activity.  Counts Three and Four are brought against Defendants pursuant to 42 U.S.C. § 1981 and allege

that Plaintiff was subject to race discrimination and/or retaliation. Counts Five and Six are brought against the City pursuant to Title VII and allege that Plaintiff was subjected to discrimination based on her race and was subject to retaliation for engaging in protected activity. Count Seven is brought pursuant to the ADEA and alleges that the City discriminated against Plaintiff because of her age in violation of the ADEA. Count Eight is brought pursuant to the ADA and alleges the City discriminated against her because of her disability in violation of the ADA. Count Nine is brought pursuant to 42 U.S.C. § 1983 and alleges that Plaintiff is entitled to punitive damages against the individual Defendants. Defendants deny each of Plaintiff's claims and deny that Plaintiff was subject to unlawful discrimination, harassment, or retaliation of any kind.

**(c)     The legal issues to be tried are as follows:**

**<u>Plaintiff's Issues to be Tried:</u>**

1. Whether any of the Defendants discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. §1981 and the Fourteenth Amendment's Equal Protection Clause;

2. Whether the City through its agents, the individual Defendants, discriminated against Plaintiff on the basis of her race in violation of Title VII;

3.  Whether any Defendant retaliated against Plaintiff after she engaged in protected activity in violation of 42 U.S.C. §1981;

4.  Whether the City through its agents, the individual Defendants, retaliated against Plaintiff after she engaged in protected activity in violation of Title VII;

5.  Whether the City through its agents, the individual Defendants, discriminated against Plaintiff on the basis of her age in violation of the Age Discrimination in Employment Act, 42 U.S.C. §§12201 *et seq*.;

6.  Whether the City through its agents, the individual Defendants, discriminated against Plaintiff on the basis of her disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12112;

7.  Whether Plaintiff is entitled to damages, and if so, the amount and category or categories of damages;

8.  Whether Plaintiff should be reinstated to her employment with Defendant City of Forest Park, or if not, the amount of appropriate front pay damages, if any;

9.  Whether Plaintiff is entitled to recover attorneys' fees and/or costs; and

10. Whether any of Plaintiff's claims are barred by Defendants' asserted defenses.

**<u>Defendants' Issues to be Tried</u>:**

1.     Whether Plaintiff's Complaint and each of its causes of action fail to state a claim upon which relief can be granted.

2.     Whether the Court lacks subject matter jurisdiction over some or all of Plaintiff's claims.

3.     Whether some or all of Plaintiff's claims are barred by the applicable statute of limitations.

4.     Whether Plaintiff's claims are barred, in whole or in part, to the extent that she failed to exhaust administrative remedies or otherwise satisfy all conditions precedent or statutory prerequisites to bringing and maintaining her claims against Defendants.

5.     Whether Plaintiff's claims under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act are barred to the extent they were never made the subject of a charge of discrimination with the applicable government agency within the time required by law or because the claims are not within the scope of any charge of discrimination filed by Plaintiff.

6.     Whether any actions taken by Defendants with respect to the Plaintiff were for legitimate, non-discriminatory, and non-retaliatory reasons.

7. Whether any actions taken by Defendants with respect to the Plaintiff were pretexts for unlawful discrimination and/or retaliation.

8. Whether even if any adverse actions were taken against the Plaintiff for reasons related to Plaintiff's protected class status or any exercise by Plaintiff of protected rights, Plaintiff would have been subject to adverse employment actions or otherwise for reasons unrelated to any protected class status or activities, including after-acquired evidence.

9. Whether even if Plaintiff was subject to unlawful conduct based on Plaintiff's protected class status, protected activity, or any exercise by Plaintiff of protected rights, Defendants exercised reasonable care to prevent and correct the actions which support Plaintiff's claim and Plaintiff unreasonably failed to avail herself of preventive or corrective opportunities or to avoid harm otherwise.

10. Whether any adverse action taken against Plaintiff was done so in good faith without malice or reckless indifference to Plaintiff's protected rights.

11. Whether any adverse employment action taken with respect to the Plaintiff was based on a reasonable factor other than age, disability, and/or race.

12. Whether Plaintiff is a qualified individual with a disability as is contemplated by some or all of Plaintiff's claims.

13. Whether Plaintiff is otherwise qualified within the meaning of the

Americans with Disabilities Act or the Federal Rehabilitation Act.

14.     Whether Plaintiff is qualified to perform the essential functions of her job.

15.     Whether Plaintiff's claims are barred to the extent that she could not perform the essential functions of her position with or without reasonable accommodation.

16.     Whether some or all of the named Defendants were unaware of or did not perceive any alleged disability possessed by the Plaintiff.

17.     Whether conduct of the individual Defendants did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known such that individual Defendants can enjoy qualified and good faith immunity.

18.     Whether the City is liable for the individual acts of any of the individual Defendants.

19.     Whether defendants are immune from some or all of Plaintiff's claims, including, Eleventh Amendment, sovereign, governmental, official, absolute, legislative, and/or qualified immunity to the extent allowed by law.

20.     Whether Plaintiff's Complaint states a claim for punitive, actual, special, exemplary, and/or compensatory damages.

21.     Whether Plaintiff's damages are limited in any way by the remedies

and amounts provided for by statute.

22.     Whether any damages Plaintiff suffered were the direct and proximate result of her own actions and/or inactions, including, but not limited to, her own negligence or assumption of the relevant risks.

23.     Whether Plaintiff has failed to mitigate damages as required by law.

24.     Whether the City and any defendants sued in their official capacities are immune from liability for punitive damages.

25.     Whether the individual Defendants, to the extent sued in their individual capacity, are not proper parties to some or all the claims pled in this civil action.

26.     Whether any act or omission of Defendants either proximately caused or contributed to any injuries or damages incurred by Plaintiff, such that Plaintiff has a right of recovery against Defendants.

27.     Whether some or all of Plaintiff's claims are barred by the doctrine of fraud.

28.     Whether Plaintiff has unclean hands.

29.     Whether Plaintiff engaged in any conduct protected under Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. § 1981 and/or 42 U.S.C. § 1983.

30.     Whether Plaintiff was subjected to discriminatory or retaliatory conduct

sufficiently severe or pervasive to constitute conduct for which there is a legal remedy.

31.     Whether any employee, manager, supervisor or third party engaged in any unlawful conduct as alleged in the Complaint, that were outside the scope and course of their employment and/or agency and were not in furtherance of Defendants' business, and whether Defendants had knowledge of, authorized, or ratified the acts.

32.     Whether Defendants violated the rights of Plaintiff under any provisions of or amendments to the United States Constitution or Georgia law.

33.     Whether to the extent any unlawful discriminatory and/or retaliatory acts were taken against Plaintiff, the individual Defendants, in their individual capacities, engaged in any unlawful act or omission constituting direct participation in the alleged discrimination and/or retaliation.

34.     Whether Defendants, acting under color of state law or otherwise, violated any clearly established statutory or constitutional rights of Plaintiff.

35.     Whether the City made, adopted, ratified or enforced a policy, practice, custom, or procedure of terminating Caucasian employees on the basis of race, terminating employees over the age of 40, or terminating employees who are disabled.

36.     Whether the City had a policy, practice, custom, or procedure constituting deliberate indifference to the constitutional rights of employees to be free from

- 15 -

discrimination based on race, age and/or disability.

    **(d)**    **The cases listed below are:**

        **(1)**    **Pending Related Cases:** None.

        **(2)**    **Previously Adjudicated Related Cases:** None.

    **2.**    **This case is complex because it possesses one (1) or more of the features listed below (please check):**

|     |     |     |
| --- | --- | --- |
| __X__ | **(1)** | **Unusually large number of parties.** |
| _____ | **(2)** | **Unusually large number of claims or defenses.** |
| _____ | **(3)** | **Factual issues are exceptionally complex.** |
| _____ | **(4)** | **Greater than normal volume of evidence.** |
| __X__ | **(5)** | **Extended discovery period is needed.** |
| _____ | **(6)** | **Problems locating or preserving evidence.** |
| _____ | **(7)** | **Pending parallel investigations or action by government.** |
| _____ | **(8)** | **Multiple use of experts.** |
| _____ | **(9)** | **Need for discovery outside United States boundaries.** |
| _____ | **(10)** | **Existence of highly technical issues and proof.** |
| _____ | **(11)** | **Unusually complex discovery of electronically stored information.** |

3.    **Counsel**:

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

|              |                         |
|--------------|-------------------------|
| **Plaintiff:** | Edward D. Buckley, Esq.  |
|              | Buckley Beal, LLP        |
|              |                         |
| **Defendant:** | David A. Cole, Esq.      |
|              | Freeman Mathis & Gary, LLP |

4.    **Jurisdiction**:

**Is there any question regarding this Court's jurisdiction?**

  X   **Yes**  (*See* Exhibit "A")  _____  **No**

**If "yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

5.    **Parties to this Action**:

     (a)    **The following persons are necessary parties who have not been joined:**

None known at this time.

     (b)    **The following persons are improperly joined as parties:**

Defendants contends that the individual Defendants are improper parties to this

action.

     (c)    **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

The City of Forest Park, Georgia is sued as the "City of Forrest Park, Georgia" in the case style of the Complaint. This Defendant's name was inadvertently misspelled and should be corrected to "City of Forest Park, Georgia."

> **(d)   The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

The parties agree to inform the Court should any further such contentions become known

**6.   Amendments To The Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendments are contained in LR 15.**

**(a)   List separately any amendments to the pleadings which the parties anticipate will be necessary:**

None known at this time.

**(b)   Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7.   Filing Times for Motions:**

**All motions should be filed as soon as possible.  The Local Rules set specific filing limits for some motions.  These times are restated below.**

All other motions must be filed **WITHIN THIRTY (30) DAYS** after the beginning of discovery, unless the filing party has obtained prior permission of the Court to file later.  **Local Rule 7.1A(2).**

       (a)   **Motions to Compel**:  before the close of discovery or within the extension period allowed in some instances.  **Local Rule 37.1.**

       (b)   **Summary Judgment Motions**:  within thirty (30) days after the close of discovery, unless otherwise permitted by Court order.  **Local Rule 56.1.**

       (c)   **Other Limited Motions**:  refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

       (d)   **Motions Objecting to Expert Testimony**:  **Daubert** motions with regard to expert testimony no later than date that the proposed pretrial order is submitted.  **Local Rule 7.2F.**

**8.**   **Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and the basis for the party's objection.  **NOTE:** your initial disclosures should include electronically stored information.  Refer to Fed. R. Civ. P. 26(a)(1)(B).

None known at this time.

**9.**   **Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.

Not at this time.

10.   __Discovery Period__:

The discovery period commences thirty (30) days after the appearance of the first Defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three (3) discovery tracks: (a) zero month discovery period; (b) four months discovery period; and (c) eight months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

1.   All matters pertaining to the allegations contained in Plaintiff's complaint [Doc. 1], and any defenses and affirmative defenses available to Defendant.

2.   Information pertaining to Plaintiff's alleged damages and mitigation thereof.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

The parties anticipate that additional time will be needed to complete discovery given the number of defendants and anticipated volume of documents to be produced and reviewed in this matter.  Therefore, the parties request an initial six-month discovery period.  The parties reserve the right to move the Court for a discovery

extension if necessary, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. They will confer and attempt to agree as to any necessary extension before moving the Court for the same.

**11.   Discovery Limitation:**

      **(a)   What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

      Pursuant to Fed. R. Civ. P. 5(b)(2)(e), the Parties consent to service by electronic means with respect to discovery requests and responses, in which event such service is complete upon transmission.

      The parties further agree to engage in discussions regarding a categorical privilege log in the event a traditional privilege log would significantly delay the production of responsive documents. Should a dispute arise, the parties agree that they will confer in good faith before filing any motions related to claims of privilege.

      Although the Parties do not request that any other changes be made to existing discovery limitations imposed under the Federal or Local Rules, the Parties reserve the right to move the Court for additional limitations on or expansions of discovery in the future, if necessary, in accordance with the Federal and Local Rules.

      **(b)   Is any party seeking discovery of electronically stored information?**
       **X**  **Yes**         **_____**  **No**

**If "yes,"**

**(1)    The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The parties have discussed and will continue to discuss the extent of electronic discovery and believe any issues that may arise can be resolved amicably. The parties have held preliminary discussions relating to the discovery of electronically stored information ("ESI") and have agreed to the following preliminary stipulations in an effort to facilitate discovery of ESI.

1. If ESI is a subject of discovery, it should be requested with as much specificity as possible to minimize the required expense.

2. If advanced search methodologies become necessary, the parties agree to confer in attempt to reach agreement regarding the method of culling voluminous materials. The parties agree to cooperate in the development of a list of ESI search terms, where appropriate, that will then be run against potentially relevant data sets to determine whether, or to what extent, the terms return a large number of "false hits." The parties further agree to confer about other search parameters including identifying relevant date limitations and specific custodian email accounts to be searched, to exclude irrelevant data.

3. If the producing party claims that production of ESI would be an "undue burden," the producing party shall raise the issue with the party seeking production as soon as possible. No Party shall request reimbursement for the location or production of ESI without first providing an estimate of those costs to the party seeking production and conferring about those costs. If the parties cannot reach agreement, they shall jointly seek guidance from the Court.

**(2)     The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

Electronically stored information may be produced in PDF format on either a disk or via electronic means, and metadata need not be produced. To the extent that any party believes, on a case-by-case basis, that metadata for a specific document or class of documents should be produced, the parties will meet and confer in good faith to determine what production is necessary.

Initially, the parties plan to exchange written discovery. Upon the production of documents, the parties may identify specific documents to be produced in native format. The Parties agree to preserve all electronically stored data currently in their

possession, including, but not limited to, cellular data and text messages sent from or received by any mobile device in their possession related to the claims and defenses in this case.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12.** **Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

None at this time.

**13.** **Settlement Potential:**

**(a)    Lead Counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on Tuesday, February 8, 2022 and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.**

For Plaintiffs:    Lead Counsel (signature): */s/ J. Kyle Brooks*
*(on behalf of Edward D. Buckley)*

Other Participants:

For Defendants:    Lead Counsel (signature): */s/ David A. Cole*

Other Participants: */s/ Shaheem M. Williams*

**(b)     All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

    _X_        **A possibility of settlement before discovery;**

    _X_        **A possibility of settlement after discovery;**

    _____      **A possibility of settlement, but a conference with the Judge is needed.**

    _____      **No possibility of settlement.**

**(c)     Counsel (_X_) do or (___) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.  The proposed date of the next settlement conference is to be determined by the parties.**

**(d)     The following specific problems have created a hindrance to settlement of this case:**

None at this time.

**14. <u>Trial By Magistrate Judge</u>:**

**Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a)     The parties (___) do consent to having this case tried before a magistrate judge of this Court.  A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the Clerk of Court this _____ day of _____, 2021.**

**(b)     The parties (_X_) do not consent to having this case tried before a magistrate judge of this Court.**

Completed form submitted this 22nd day of February, 2022.

| | |
|---|---|
| */s/ Edward D. Buckley* | */s/ David A. Cole* |
| Edward D. Buckley | David A. Cole |
| Georgia Bar No. 092750 | Georgia Bar No. 142383 |
| J. Kyle Brooks | Shaheem M. Williams |
| Georgia Bar No. 773561 | Georgia Bar No. 666654 |
| 600 Peachtree Street NE, Suite 3900 | 100 Galleria Parkway |
| Atlanta, GA 30308 | Suite 1600 |
| (T) (404) 781-1100 | Atlanta, GA 30339-5948 |
| (F) (404) 781-1101 | (T) (770) 818-0000 |
| (E) edbuckley@buckleybeal.com | (F) (770) 937-9960 |
| (E) kbrooks@buckleybeal.com | (E) dcole@fmglaw.com |
| | (E) smwilliams@fmglaw.com |
| *Counsel for Plaintiffs* | |
| | *Counsel for Defendants* |

**Exhibit "A"**

**<u>Statement Regarding Jurisdiction Objection</u>**

Defendants contend to the extent that Defendants are entitled to immunity, including but not limited to, Eleventh Amendment, sovereign, governmental, official, absolute, legislative, and/or qualified immunity this Court lacks subject matter jurisdiction over the Complaint.

Plaintiff contends that the Defendants are not entitled to immunity as to any of her claims and that the Court has subject matter jurisdiction over her Complaint and all of her claims against the Defendants.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **MARY C. TERRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | **1:21-CV-04613-MHC-CMS** |
| **CITY OF FORREST PARK, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I certify that on February 22, 2022, I electronically filed the foregoing JOINT

PRELIMINARY REPORT AND DISCOVERY PLAN with the Clerk of the Court

using the CM/ECF system, which will automatically send electronic notification of

such filing to the following attorneys of record:

David A. Cole
Shaheem M. Williams
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948

*/s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY C. TERRELL, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO.: |
| | ) | 1:21-CV-04613-MHC-CMS |
| CITY OF FORREST PARK, et al. | ) | |
| | ) | |
|    Defendants. | ) | |

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

The initial discovery period for this case shall be six (6) months, commencing on February 22, 2022 and continuing through and including August 22, 2022

IT IS SO ORDERED, this _____ day of _____, 2022.

_____

THE HONORABLE JUDGE CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE